# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MELVIN PHILLIPS

UNDER SEAL

CRIMINAL COMPLAINT

CASE NUMBER: 08 CR 643

MAGISTRATE JUDGE MASON

I, Special Agent Jeff Moore, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

### Count One

On or about May 16, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, defendant: knowingly and intentionally distributed a controlled substance, namely, 50 or more grams of mixtures containing cocaine base in the form of "crack" cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

### Count Two

On or about May 16, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, defendant: used, carried and brandished a firearm during and in relation to the commission of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, a violation of Title 21, United States Code, Section 841(a)(1), and who in furtherance of a violation of Title 21, United States Code, Section 841(a)(1), possessed a firearm;

in violation of Title 18, United States Code, Section 924(c)(1)(A).

I further state that I am a __Special Agent with the Federal Bureau of Investigation__ and that this complaint is based on the following facts:

. See Attached Affidavit

Continued on the attached sheet and made a part hereof:  _X_ Yes     ___ No

FILED
AUG 1 3 2008
8-13-08
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Signature of Complainant

Sworn to before me and subscribed in my presence,

August 13, 2008                                             at         Chicago, Illinois
Date                                                                             City and State

Michael T. Mason, U.S. Magistrate Judge
Name & Title of Judicial Officer                           Signature of Judicial Officer

STATE OF ILLINOIS    )
                     )   SS
COUNTY OF COOK       )

## AFFIDAVIT

I, Jeffrey B. Moore, Special Agent, Federal Bureau of Investigation, being duly sworn, state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been so employed for over five and a half years. I have participated in investigations involving drug trafficking activities for more than three years. In connection with my official FBI duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846. I have also been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses, informants and others who have knowledge of narcotics trafficking. I have received specialized training in the enforcement of laws concerning the activities of narcotics traffickers.

2. I am responsible for investigating crimes that involve, among other things, the unlawful importation of illegal narcotics (21 U.S.C. §§ 952, 960 and 963), the possession with the intent to distribute and the distribution of controlled substances (21 U.S.C. § 841), conspiracy to distribute and possess with intent to distribute controlled substances (21 U.S.C. § 846), the use of communication facilities to further these offenses (21 U.S.C. § 843(b)), as well as the laundering of monetary instruments (18 U.S.C. §§ 1956 and 1957). In conducting these investigations, I have used a variety of investigative

1

techniques and resources in several investigations that have included physical and electronic surveillance, the use of confidential sources and informants, and securing other relevant information using other investigative techniques. Through these investigations, my training and experience and conversations with other special agents, as well as other law enforcement personnel, I have become familiar with methods used by narcotic traffickers to safeguard their narcotics, to distribute narcotics, and to collect and launder related narcotic proceeds.

3. The information in this Affidavit is drawn from my personal observations and knowledge, interviews of cooperating sources, a review of consensual recordings, a controlled purchase of narcotics, physical surveillance, information received from other law enforcement agents, my experience and training, and the experience of other agents.

4. This Affidavit is made for the limited purpose of establishing probable cause to support a criminal complaint charging MELVIN PHILLIPS, also known as (aka) "Mel Moe"("PHILLIPS"), with the offense of knowingly and intentionally distributing a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and used, carried, and brandished a firearm during and in relation to the commission of a drug trafficking crime for which he may be prosecuted in court of the United States, that is, a violation of Title 21, United States Code, Section 841(a)(1), and who in furtherance of a violation of Title 21, United States Code, Section 841(a)(1), possessed a firearm in violation of Title 18, United States Code, Section 924(c).

5. Based on the information contained in this Affidavit, I submit that there is probable cause to believe that on or about May 16, 2008, PHILLIPS knowingly and intentionally distributed a controlled substance, namely in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine; in violation of Title 21, United States Code, Section 841(a)(1) and used, carried, and brandished a firearm during and in relation to the commission of a drug trafficking crime for which he may be prosecuted in court of the United States, that is, a violation of Title 21, United States Code, Section 841(a)(1), and who in furtherance of a violation of Title 21, United States Code, Section 841(a)(1), possessed a firearm in violation of Title 18, United States Code, Section 924(c). Since this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not include each and every fact known to me concerning this investigation. In particular, as set forth below, a confidential source ("CS1") working with the FBI completed the controlled purchase of crack cocaine from PHILLIPS on May 16, 2008. In addition, during the May 16, 2008 drug transaction, CS1 observed PHILLIPS in possession of a firearm.

6. Since May 2008, a CS1 has provided information that PHILLIPS is a major distributor of cocaine and other drugs for the Loaner faction of the Black P Stone Nation (BPSN) street gang. CS1 was a member of BPSN street gang for approximately twenty years. CS1 advised agents that PHILLIPS distributes cocaine, crack cocaine and other drugs out of a small grocery store located at 1151 West 59th Street, Chicago, Illinois ("the Store"). CS1 has known PHILLIPS for several years, and during that time period observed PHILLIPS conduct narcotics transactions. Through conversations with PHILLIPS and personal

3

observation, CS1 knows that PHILLIPS distributes crack cocaine and other drugs from the Store.

7. CS1 has agreed to cooperate with the FBI in exchange for monetary compensation for services provided and reimbursement of expenses. To date, CS1 has been paid $7,444.46. CS1 has twenty-eight total arrests including, three arrests for Possession of a Firearm, three arrests for Aggravated Assault, two arrests for Assault, two arrests for Battery, two arrests for Delivery or Manufacture of a Controlled Substance, five arrests for Possession of Cannabis, two arrests for Possession of a Controlled Substance, three arrests for Disorderly Conduct, one arrest for Aggravated Battery, Criminal Trespass to a Vehicle, Theft, Domestic Battery, Operating a Car without a License and violation of parole. Defendant has at least 6 convictions for (1) Domestic Battery, (2) Possession with Intent to Sell a Controlled Substance, (3) Assault, (4) Aggravated Discharge of a Firearm, (5) Manufacture/Delivery of Cannabis, and (6) Possession of a Firearm. During the controlled purchase of narcotics described herein, a review of the audio/video recording of the controlled purchase revealed that CS1 attempted to keep a portion of the buy money and narcotics for himself/herself. After being confronted by law enforcement agents, CS1 admitted to attempting to keep money and narcotics from the agents. CS1 turned over to agents the money he/she kept during the transaction at a later date. Additionally, during another controlled purchase not described herein, despite being admonished by law enforcement agents regarding criminal activity, CS1 discussed smoking marijuana at a later time. On July 20, 2008, CS1 was arrested on a probation violation for failing to report. As

a result, CS1's probation was extended an additional year.

8.   Through his/her contact with PHILLIPS, PHILLIPS provided to CS1 his cellular telephone number as (773) 414-7641 ("Target Phone 1"). CS1 advised that he/she has seen PHILLIPS use Target Phone 1 to facilitate drug transactions.

9.   On May 16, 2008, at the direction of agents, CS1 called PHILLIPS to discuss the purchase of crack cocaine. According to CS1, PHILLIPS confirmed that he had 63 grams of crack cocaine available and that he would sell it to CS1 for $1,500. PHILLIPS told CS1 to come to the Store when CS1 was ready to conduct the transaction. This call was not recorded.

10.  On May 16, 2008, at approximately 12:25 p.m., CS1 met with agents and at their direction placed a consensually recorded call to Target Phone 1 in order to initiate the controlled narcotics purchase from PHILLIPS. CS1 dialed the phone number for Target Phone 1 in the presence of law enforcement officers, who confirmed the number was that for Target Phone 1. During the conversation, CS1 told PHILLIPS, "I'm leaving the east coast now man with the money and everything man, I have to make one little stop and I'm straight at you.[1]" PHILLIPS asked, "What is that going to be about forty-five minutes?"

---

[1] At various points in the Affidavit, I will offer my interpretations of certain recorded conversations/meetings in brackets and otherwise. My interpretations of these conversations are based on my knowledge of the investigation to date and review of other recordings, the contents and context of conversations, prior and subsequent conversations, the results of physical surveillance, conversations with other officers and agents, and my experience and familiarity with these types of investigations generally. Moreover, the voice identifications for the conversations set out below are preliminary. The identification of some individuals involved in these conversations and meetings has not yet been completed. Some of these summaries do not include references to all the topics covered during the course of the conversations. In addition, the summaries do not necessarily include references to all statements made by the speakers on the topics that are mentioned. For these recordings, I have relied on

CS1 responded, "Yeah, what's that number, what are you gonna do me for, $1,250 (meaning is the price for the cocaine $1,250 )?" PHILLIPS responded, "No boy, just get up here, I'm at the store."

11. At approximately 12:52 p.m., CS1 received an unrecorded call from PHILLIPS in the presence of agents. During the call, PHILLIPS questioned CS1 regarding her/his whereabouts. CS1 told PHILLIPS that s/he was on her/his way to the Store. At approximately 1:10 p.m., CS1 received a second unrecorded call from PHILLIPS in the presence of agents. Again PHILLIPS questioned CS1 regarding her/his whereabouts. CS1 told PHILLIPS that s/he would be at the Store in five minutes.

12. At the completion of the call, agents searched CS1 for the presence of weapons, drugs and excessive money, none of which were found. CS1 was equipped with a concealed audio/video recorder and transmitter that allowed law enforcement officers to monitor CS1's conversations in real time. CS1 was provided with $1,700 in funds to purchase 63 grams of crack cocaine. At approximately 1:11 p.m., the concealed audio/video recorder and transmitter were activated and CS1 was transported to the area of 1151 West 59th Street, Chicago, Illinois, by a law enforcement officer. CS1 was kept under surveillance by law enforcement while s/he walked to the Store.

13. Based on a review of the recording and debriefing of CS1 following the meeting with PHILLIPS, agents learned the following: (a) when CS1 entered the Store, the

---

draft-not final-transcripts of conversations.

Store was occupied by PHILLIPS and other members of PHILLIPS's family; (b) PHILLIPS told CS1 to go to a back room of the store, and CS1 and PHILLIPS both entered the back room and closed the door; (d) CS1 counted out and handed PHILLIPS an undisclosed amount of money and told PHILLIPS to "count that," then PHILLIPS counted a portion of the money and stated, "A g" ($1,000); (d) PHILLIPS continued to count and stated, "Thirteen" ($1,300), and CS1 stated, "I'm missing a hundred" and handed PHILLIPS an additional amount of money; (e) PHILLIPS then handed CS1 a clear plastic bag and stated, "That's yours to the side and that's theirs;" (f) After the exchange, PHILLIPS told CS1, "Buy some of this weed I got;" and (g) PHILLIPS pulled a nickel plated semi-automatic pistol from his waist band and stated, "Pow"(imitating the sound of a gun firing) and asked CS1, "You like that?" CS1 then exited the Store in possession of the crack cocaine provided by PHILLIPS. CS1 was kept under surveillance by law enforcement until he/she entered the vehicle driven by a law enforcement officer. CS1 was then driven to a predetermined meeting location.

  14. At approximately 1:31 p.m., CS1 met with agents and the concealed recorder and transmitter were deactivated. Agents took possession of the off white chunky substance which was consistent with the characteristics of crack, and funds not used in the transaction. Agents searched CS1 for additional contraband and money, none of which were found. Later, agents reviewed the video and audio recording made while CS1 was meeting with PHILLIPS and confirmed CS1's description of the narcotics transaction between CS1 and PHILLIPS. CS1 acknowledged that during the transaction, PHILLIPS provided her/him

7

with an additional 1/16 of an ounce of crack cocaine for arranging the deal and that s/he paid $1,400 for the cocaine instead of $1,500 s/he originally reported to case agents. CS1 handed PHILLIPS $100 and the 1/16 ounce of crack cocaine before s/he left the Store so that it would not be found by case agents during the post operation search.

15.  The suspected crack cocaine obtained during the transaction was subsequently analyzed by the DEA North Central Laboratory, which concluded that the substance was 59.9 grams of cocaine base and contained sodium bicarbonate.

16.  After reviewing the video recording of the May 16, 2008 transaction with PHILLIPS and based on my training and experience, the object PHILLIPS pulled from his waistband during the transaction was a firearm.

## Conclusion

16.     Based on the above information, I submit there is probable cause to believe that on May 16, 2008, MELVIN PHILIPS knowingly and intentionally distributed a controlled substance, namely 50 grams of more of mixtures containing cocaine base, in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and used, carried, and brandished a firearm during and in relation to the commission of a drug trafficking crime for which he may be prosecuted in court of the United States, that is, a violation of Title 21, United States Code, Section 841(a)(1), and who in furtherance of a violation of Title 21, United States Code, Section 841(a)(1), possessed a firearm.

FURTHER AFFIANT SAYETH NOT.

_____
Jeffrey B. Moore
Special Agent, FBI

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 13th DAY OF August, 2008.

_____
Magistrate Judge Michael T. Mason